Matter of the Appraisal under the Transfer Tax Act of the Property of WILLIAM H. HAMILTON, Deceased.

(Surrogate's Court, Kings County, May, 1917.)

Transfer tax — trusts — trustees — trust agreement between partners — wills — executors and administrators — contracts — gifts.

Where, under a trust agreement between two partners by which one sold his entire interest in the business to the other, it was agreed that a stipulated amount should be held in trust by the latter and be a first lien upon the assets of the business during the continuance of the trust, the trust fund, upon the death of the trustee, constitutes no part of his estate.

The deceased trustee by his will recommended that his executors set apart certain shares of stock, standing in his name, of a corporation that succeeded to and was carrying on the business at the time of his death, to an amount sufficient to produce a stipulated income and to discharge the principal at the termination of the life estate, with a further recommendation that said executors should enter into an agreement with the beneficiaries of the trust to accept such provision in full settlement and discharge of all obligations under the trust agreement. The beneficiaries having approved of and consented to this method of adjustment and compromise of the trust obligations, *held*, that as their rights had no concern with any property of which the deceased trustee died possessed there was no taxable transfer.

The executors having been constituted substituted trustees of the trust, their dealings with the beneficiary in the adjustment of the trust and the manner of the investment of its funds were in their capacity as substituted trustees and not as executors of the will.

APPEAL from an order fixing the transfer tax.

Henry B. Corey, for executors and trustees.

Marcus B. Campbell, for respondent state comptroller.

Surrogate's Court, Kings County, May, 1917.   [Vol. 100.

KETCHAM, S.   The executors appeal from the order fixing the transfer tax so far as a tax is thereby imposed upon interests claimed to have passed to Josephine C. Haslam and Frederic M. Haslam upon the death of the decedent.

The appellants contend that these interests represent benefits which were secured to the persons above named by a deed of trust made by the decedent and that in the possession and enjoyment of the same they are not the recipients of a taxable transfer.   The comptroller does not assert that the interests established by the deed of trust are subject to the tax, but he does insist that, pursuant to the decedent's will, the beneficiaries have accepted from the executors a provision from the decedent's estate more favorable to them than the trust provision, and that the transfer thus effected is within the rule that where a bequest or devise is made for the purpose of paying a debt the devise or bequest, if accepted by the person to whom the debt was due, becomes taxable.

On March 20, 1901, the deceased entered into an agreement with Frederic Haslam, who was the husband of Josephine Haslam, and the father of Frederic M. Haslam.   This agreement recited that the parties thereto were engaged in business under the firm name of Fred. Haslam & Co.   By it Frederic Haslam assigned to the deceased all his interest in the business of the said firm, and the decedent, for abundant consideration to him moving, covenanted that upon the death of Frederick Haslam he would hold $15,000 in trust to pay the income thereof to Josephine during her life and upon her death to pay the principal sum or so much thereof as might then remain to Frederic, the younger.   The decedent was authorized by the agreement to allow the said principal to remain in the business of Fred. Haslam & Co. " in which case it

should be a first lien upon all the assets of the said business and should bear interest at the rate of five (5%) per cent." He was authorized to pay to Josephine such part of the principal as he might deem necessary. The instrument provided that, if the decedent " should die prior to the determination of the said trust, leaving a will, his executor therein named shall become a substituted trustee for the purpose of carrying out the provision of the agreement and should be bound by all the covenants of the trustee therein contained."

Frederic Haslam thereafter died. The will of the decedent indicates that this event occurred before February 18, 1914, and that before that date the corporation, " Fred. Haslam & Co., Inc.," was formed for the continuance of the business above mentioned. The will contained the following:

" *Third.* In view of my existing obligations arising out of the so-called ' Haslam Trust Agreement,' by the terms of which I have agreed to pay Mrs. Josephine Haslam the sum of one thousand dollars ($1,000) each and every year during her lifetime, and upon her decease to pay the sum of fifteen thousand dollars ($15,000) to her son Frederic M. Haslam, I authorize, empower and direct my executors and trustees, hereinafter appointed, to set apart out of my estate so much thereof as will produce an annual income amounting to the said sum of one thousand dollars, and to hold the same in trust for the following uses and purposes: First, to pay the said income to the said Josephine Haslam in compliance with the terms of the said agreement yearly during her lifetime, and at her death to pay Frederic M. Haslam the sum of fifteen thousand dollars ($15,000) in full settlement and discharge of all obligations of the said agreement.

*Fourth.* But it is my wish that the fund thus set

Surrogate's Court, Kings County, May, 1917.    [Vol. 100.

apart shall, if it is legally possible, consist of fifteen hundred (1,500) shares of the par value of fifteen thousand dollars of the corporation of Fred Haslam & Co., Inc., which said shares shall be held by my trustees in trust, first, to pay to Josephine Haslam the annual dividend up to one thousand dollars thereof during her lifetime, the principal thereof to go to the said Frederic M. Haslam upon the death of his mother, in full payment and satisfaction of all claims against me or my estate, and in full discharge of all the obligations of the Haslam trust agreement hereinbefore referred to and to be free from any transfer tax. If, however, the income or dividends of the said stock shall not be sufficient to pay said Josephine Haslam the full annual sum of one thousand dollars, as provided by said agreement, my said trustees shall make up and pay the difference between the dividends or income thereof and the said amount of one thousand dollars from the dividends or income of the remainder of the stock held by them in trust as hereinafter provided; and I recommend that as soon as practicable after my decease an agreement be entered into between said Josephine Haslam and Frederic M. Haslam and my wife, Alice A. Hamilton, and my executors and trustees under which such an arrangement may be legally established and carried out by written agreement between the parties.

" *Fifth*. In the event that the said Josephine Haslam and Frederic M. Haslam, or either of them, shall not approve of the method proposed by me in paragraph ' fourth ' of this will for settlement of the claim arising out of the Haslam trust agreement, then and in that event I give and bequeath the said fifteen hundred shares of stock in the corporation Fred Haslam & Co., Inc., to Clara L. Hamilton and Clara B. Corey, as trustees, nevertheless, for the following uses and

purposes: First. To pay over the dividends and income thereof to my wife Alice A. Hamilton during the term of her natural life, and upon her death to pay over the dividends and income thereof to my sister, Clara L. Hamilton, during the term of her natural life, and at her death I give and bequeath the principal of said shares to Frederic M. Haslam absolutely for his sole use and benefit forever.''

On January 26, 1916, an agreement was made to which the executors and beneficiaries of the trust were parties whereby it was covenanted that the executors and trustees should set apart and hold $17,000 of the par value of the stock of the said corporation upon trust to pay the income thereof up to $1,000 to Josephine during her life, and upon her death to transfer the stock to Frederic. It was therein provided that if the said stock should be of a greater value than $15,000 the trustees should transfer (to Frederic Haslam) only so much of the said trust fund as should be of the value of $15,000. The agreement contained the release to Josephine and Frederic of any claims arising under the earlier trust agreement or by reason of the selection and setting aside of the stock as the trust fund contemplated by the later agreement.

It must be presumed that upon the death of Frederic Haslam, the elder, the decedent did set aside and hold the sum of $15,000 in trust in accordance with his covenants so to do. That was his duty and, in the absence of proof on the part of the comptroller affirmatively showing the trustee's failure in duty, it will be found that all things were done by him with due regard for the trust which he had assumed. He, therefore, died holding $15,000 in trust for the beneficiaries, Josephine and Frederic. Between them and all persons in privity with the estate not only did this sum constitute a trust fund isolated from his personal

funds, but at his death the beneficiaries had a property right in that fund. This right was equitable, but was no less theirs by a transfer effectuated in his lifetime than if it had been a legal right assigned to them and taken into possession. Thus the trust fund formed no part of the estate of which the testator died possessed. While he held it in legal possession he held it only as trustee, and the ownership thereof, beneficial, but none the less vested, was in Josephine and Frederic Haslam.

The comptroller cites *Matter of Gould*, 156 N. Y. 423. There the testator, in his will, confessed an indebtedness to his son and liquidated the amount thereof as $5,000,000. He then directed that the sum so fixed be paid by the delivery to the son of a sum in cash and certain securities specified. It was found as a fact and accepted by the courts that the indebtedness was actual and subsisting, and the Court of Appeals regarded it as established that the purpose of the testator was to discharge his debt to his son. It was held that when the son elected to accept the provision of the will rather than to assert his claim as a creditor of the estate he received a taxable transfer.

In the opinion of the court, Parker, Ch. J., says: " He (the son) could have refused compensation in this manner, and had he done so whatever sum he might have recovered against the estate under the agreement with his father would not have been taxable under the Taxable Transfer Act, for there would have been in such case no transfer by will. This he did not do; but instead elected to accept a transfer of a certain amount of money, bonds and stocks under the will in compensation for his services, and the question is, is the money and property thus transferred taxable? To that question the statute must furnish the answer. * * * It matters not what the motive

of a transfer by will may be, whether to pay a debt, discharge some moral obligation, or to benefit a relative for whom the testator entertains a strong affection, if the devise or bequest be accepted by the beneficiary, the transfer is made by will, and the state by the statute in question makes a tax to impinge upon that performance.''

In the case at bar there was no debt, and, therefore, no claim or interest which was soluble out of the general assets of the decedent. Here the right of the two beneficiaries had no concern with any property of which the decedent died seized, but far from that it impinged only upon a fund which was separted from the decedent's estate both before and after his death.

When a testator makes a beneficial provision for his creditor, intended as a discharge of his debt, the creditor is confronted with an election either to urge his claim against the assets of the estate or to accept such part of the same assets as are assigned to him by the legacy. In such a case, whether regard be had to his attitude as a creditor or as a legatee, his only interest in either form is enforcible against the estate of which the decedent died personally and beneficially possessed. But what choice is presented where in one relation the legatee has a property right in assets which did not pertain to the assets of the testator at death, and in the other respect has a provision in his favor which is to be satisfied only from the testator's own assets? How can his acceptance of the testamentary benefit in the case last supposed be any more than a release moving to the trustee of all his benefits under the trust deed given by him in consideration of a recognition of his rights established in the lifetime of his trustee? This would not be a transaction concerning the estate which the executors have in charge, for the trust is disconnected from such estate.

If the executors are by the deed of trust made substituted trustees, the release can inure to them only in that capacity. It would mean that since they have custody of the trust fund as true trustees and of the individual estate of their testator as executors, they themselves, as trustees, surrender the trust fund to the beneficiaries or dispose of it for their continued benefit. In such a transaction they simply close accounts between the trust and beneficiaries by the latter's consent. If, however, as in the case at bar, the persons who are both substituted trustees of the early trust and executors of the individual estate arrange with beneficiaries for a continuance of the trust in form, however modified, and for that purpose take, as trustees, a fund liquidated by agreement as the equivalent of the trust fund which has descended to them as such, it must be presumed that the fund so liquidated is derived from the trust and not from the general estate. It may well be doubted that the legatee is put to an election between two possible rights when one right is held with respect to the decedent's estate and the other has nothing to do with such estate.

In this view there was no transfer, taxable or otherwise. There would only be a confirmation and maintenance of a transaction which was made in the lifetime of the decedent and by which a transfer to the beneficiaries was then consummated.

But in this case we are not left to legal conjecture as to the effect of the agreement made by the executors and these two beneficiaries. The trust agreement provided that if the trustee (the decedent) should die leaving a will his executor therein named should become a " substituted trustee for the purpose of carrying out the provision of this agreement and should be bound by all the covenants of trustee herein con-

tained." Thus the decedent appointed these executors to succeed him in the trust and bound them to its fulfillment. Thus as soon as they became executors they were the trustees of the trust at once invested not only with the duties thereby prescribed, but with the fund itself. As such trustees they were bound by their decedent's declaration of trust and could not escape the duty of assuring to the beneficiaries from property not coming to themselves, as executors, every right and advantage which the trust promised to them. Indeed it was their duty to withhold the trust fund against the executorial administration with a zeal no less than if the executors were other than themselves.

Hence, when they made the agreement with the beneficiaries not only by legal implications, but by virtue of their decedent's appointment and their acceptance thereof, they dealt as trustees and only as such, so far as concerned the establishment of a fund obviously calculated to preserve the fund which had been in the care of their decedent.

How against the constraint of all these circumstances can it be imagined that the new fund was provided from the assets of the decedent's estate and not from the assets of the established trust? Of course, the acceptance by the beneficiaries of the advantages assured to them by this agreement so far as they coincided with those to which they were already entitled in the trust could not be a taxable transfer.

It is claimed that in the readjustment of this trust there was accorded to the beneficiaries more than was necessary to a close observance of the terms of the trust and that the excess was provided from the assets which were of the decedent personally. This excess might be the subject of a transfer tax, but only if it were awarded in accordance with the will. If without warrant of a legacy or other testamentary com-

mand, the executors paid too much, then if the sum paid came from the general assets under their administration no tax could be imposed upon the transaction as a transfer to the beneficiaries, whatever remedies might otherwise be invoked in behalf of the taxing power or by the residuary legatees.

The argument thus far has assumed that the contract in which the executors and the beneficiaries participated evidenced a transfer which was ordained and directed by the will. But there remains the inquiry whether by that contract the beneficiaries have received property by the testamentary mandate or only by the compromise reached by their own agreement. If it appears that the testator was content with a mere suggestion that it would be a good thing that the executors and the beneficiaries should agree upon the adjustment of the trust, then nothing of all which the beneficiaries have received could be theirs by testamentary provision.

Paragraph third of the will gives the executors power to set aside from the estate so much as will produce an annual income of $1,000, to hold the same in trust to pay the said income of Josephine Haslam in compliance with the testator's agreement with her husband, and at her death to pay $15,000 to Frederic Haslam. This power is obviously permissive in its terms. It was made clearly dependent upon an acceptance by the beneficiaries. It actually bestowed no power to do anything with the testator's estate except to agree with the beneficiaries if they chose so to agree.

Paragraph fourth expresses the wish that the fund thus set apart shall, " if it is legally possible," consist of stock of the Haslam Corporation of the par value of $15,000, to be held in trust to pay Josephine the annual dividend up to $1,000, the principal to go to Frederic M. Haslam upon the death of his mother.

Misc.]      Surrogate's Court, Kings County, May, 1917.

It is then provided in paragraph fourth that if the dividends shall not suffice to pay Josephine the full sum of $1,000, the trustees shall make up the difference from other stock. In the same paragraph there then occurs the following: " I recommend that as soon as practicable after my decease, an agreement be entered into between said Josephine Haslam and Frederic Haslam and my wife, Alice A. Hamilton, and my executors and trustees, under which such an arrangement may be legally established and carried out by written agreement between the parties."

In the 5th paragraph all of the testator's recommendations contained in the 4th paragraph are called by him " the method proposed by me    *    *    *    for settlement of the claim arising out of 'the Haslam trust agreement," and there follows a gift of the said stock, if either of the Haslams shall not approve this method, to the executors in trust, to hold the same in sharp contravention of the original trust.

In all this it is impossible to discover any gift to the Haslams of any interest or benefit such in kind or extent as was the subject of the agreement which was afterward made with them. There is only a permission to treat with them in the hope that they will accept the proposed commutation of the trust. That no gift was accomplished or intended is manifest in every expression of the paragraphs on the subject of the method proposed, but especially does it appear in the gift over in hostility to the trust in case the method shall not be approved by the agreement in writing. If there was no gift, it is of no importance whether the obligation of the decedent be regarded as a debt or as a trust over property separate from the decedent's estate. The utmost that can be extracted from the will is that a method of settlement

is proposed which is to come to naught if it cannot be adopted by agreement.

It was never heard that an admonition in a will to compromise a dispute between the testator and others was a legacy to such others of the price of the possible compromise which they might or might not make, or that the transfer of assets made in consideration of such compromise is taxable. However earnestly the testator advised the arrangement, which was made in this case, he did not make it, for he could not, and he did not by will give anything to the persons with whom the executors compromised.

The order so far as appealed from is modified, and as modified may stand.

Order modified.